Albert D. Moustakis, Plaintiff-Appellant,†

v.

State of Wisconsin Department of Justice,
Defendant-Respondent,

Steven M. Lucareli, Intervenor.

Court of Appeals

*No. 2014AP1853. Submitted on briefs February 24, 2015.
—Decided July 31, 2015.*

2015 WI App 63

(Also reported in 869 N.W.2d 788.)

† Petition for Review Granted.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Benjamin J. Krautkramer*, Mosinee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Brian P. Keenan*, assistant attorney general.

Before Hoover, P.J., Stark and Hruz, JJ.

¶ 1. HRUZ, J. Albert Moustakis, the Vilas County District Attorney, appeals an order dismissing his action under Wis. Stat. § 19.356(4) to enjoin the Wisconsin Department of Justice (DOJ) from releasing certain records pertaining to Moustakis in response to a public records request.[1] We conclude that various provisions of Wisconsin's public records law unambiguously preclude Moustakis from maintaining this action —most notably, Wis. Stat. § 19.32(1bg), which excludes from the definition of "employee" those individuals "holding a . . . state public office." We therefore agree with the circuit court that Moustakis lacks standing to bring an action under § 19.356(4), and we affirm.

## BACKGROUND

¶ 2. On July 18, 2013, The Lakeland Times, a regional newspaper serving parts of northern Wisconsin, submitted a request for records to the DOJ.[2] The Lakeland Times requested records of any "complaints or investigations regarding Vilas County District At-

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

[2] The Intervenor, Steven Lucareli, is not the original records requester, but filed a motion to intervene in this action after filing his own open records request seeking the same records sought by the Lakeland Times. The DOJ denied Lucareli's records request on April 21, 2014, citing the present litigation.

torney Al Moustakis . . . ." This request covered records containing information "regarding any investigation of his conduct or handling of cases while district attorney[,]" as well as records containing "information related to complaints and investigations regarding Mr. Moustakis that were completed or ended without any action taken against him . . . ." The Lakeland Times also requested "any communications between Mr. Moustakis and [the DOJ] since he took office in 1995."

¶ 3. The DOJ's public records custodian, attorney Kevin Potter, referred the request to the DOJ's Division of Criminal Investigation and Division of Legal Services to prepare a response. On February 17, 2014, Potter approved the proposed response for release, which consisted of redacted records and a cover letter. On February 19, Potter left Moustakis a voice message advising him that the DOJ would be releasing records responsive to The Lakeland Times' request. On February 21, prior to release of the records, Potter's assistant mailed a copy of the approved response to Moustakis.

¶ 4. On March 6, 2014, Moustakis notified Potter he would be commencing an action and requested that the DOJ withhold production of the records until the action's resolution. Moustakis filed this action on March 10, seeking an order under Wis. Stat. § 19.356(4) restraining the DOJ from providing access to the requested records.[3] He asserted the records concerned "the investigation of repeated allegations made by a former political rival[,]" which allegations did not

---

[3] Wisconsin Stat. § 19.356(4) permits a "record subject," no more than ten days after receiving notice under § 19.356(2)(a), to "commence an action seeking a court order to restrain the authority from providing access to the requested record."

involve on-duty misconduct. Moustakis further alleged that the DOJ investigation did not lead to any charges against him.

¶ 5. The DOJ filed a motion to dismiss on May 23, 2014. The motion asserted that the records set for release were not of a type identified by Wis. Stat. § 19.356(2)(a) as requiring prerelease notice or judicial review. The DOJ reasoned that Moustakis did not qualify as an "employee," as that term is defined by Wis. Stat. § 19.32(1bg), and therefore the records did not contain "information relating to an employee" under § 19.356(2)(a)1. Accordingly, the DOJ asserted that Moustakis had no standing to bring the present action. The DOJ further argued Potter provided Moustakis the records intended for release as nothing more than a "professional courtesy," and the DOJ was not required to do so by any statute.[4]

¶ 6. The circuit court held oral argument on the motion on June 27, 2014, and delivered its oral ruling on July 1. The court determined that the term "employee," as used in Wis. Stat. § 19.356(2)(a)1., did not include Moustakis because that term, as defined by Wis. Stat. § 19.32(1bg), specifically excluded "an individual holding local public office or a state public office." The court determined that various statutes cross-referenced by the public records law unambiguously established that district attorney is a "state

---

[4] Potter averred by affidavit that he provided Moustakis with notice and a copy of the records to be released "as a professional courtesy because [Moustakis] is a locally prominent law enforcement official and because the records to be released pertained to unsubstantiated allegations about Mr. Moustakis." Potter further averred that it is not unusual for the DOJ to provide courtesy notice, not required by any law, to persons named in or related to records identified for release in response to a public records request.

public office[.]" The circuit court rejected Moustakis's contrary interpretation of "employee" after consulting legislative history regarding the enactment of WIS. STAT. § 19.356. The court then entered a written order granting the DOJ's motion to dismiss Moustakis's public records claim.

¶ 7. The circuit court also observed that on June 25, 2014, Moustakis had filed an amended complaint alleging two additional causes of action, the first seeking a writ of mandamus and the second asserting an as-applied challenge to the constitutionality of WIS. STAT. § 19.356. There was some dispute at the July 1 decision hearing as to whether the order resulting from that hearing would be final for purposes of appeal. The DOJ moved to dismiss Moustakis's subsequent appeal from that order, which motion we denied. We ordered that, if the order was not appealable as a matter of right, leave was granted to appeal the nonfinal order.[5]

## DISCUSSION

¶ 8. " 'Standing' is a concept that restricts access to judicial remedy to those who have suffered some injury because of something that someone else has either done or not done." *Three T's Trucking v. Kost*, 2007 WI App 158, ¶ 16, 303 Wis. 2d 681, 736 N.W.2d 239, *quoted with approval in Krier v. Vilione*, 2009 WI 45, ¶ 20, 317 Wis. 2d 288, 766 N.W.2d 517. If a party to

---

[5] Given this procedural history, including an August 6, 2014 order from the circuit court, it appears there remain two causes of action stayed and pending before the circuit court, which causes of action are not at issue in this appeal. Accordingly, we remand this case to the circuit court for further proceedings consistent with this opinion.

an action for judicial review lacks standing, the action must be dismissed as to that party. *Kammes v. State Mining Inv. & Local Impact Fund Bd.*, 115 Wis. 2d 144, 151, 340 N.W.2d 206 (Ct. App. 1983).

¶ 9. Although there are multiple formulations of the test for standing, the "essence of the question . . . is whether there is an injury and whether the injured interest of the party whose standing is challenged falls within the ambit of the statute . . . involved." *Foley-Ciccantelli v. Bishop's Grove Condo. Ass'n*, 2011 WI 36, ¶ 54, 333 Wis. 2d 402, 797 N.W.2d 789. In other words, the operative question is whether the party's asserted injury is to an interest protected by the SU22statutory provision at issue. *Id.*, ¶ 55. Thus, we must decide standing by "examining the facts and interpreting [the] statute . . . at issue." *Id.*

¶ 10. "Judicial deference to the policy choices enacted into law by the legislature requires that statutory interpretation focus primarily on the language of the statute." *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. Statutory language is generally given its "common, ordinary, and accepted meaning," and if a plain meaning is evident from that language, we ordinarily stop the inquiry. *Id.*, ¶ 45. Statutory language is "interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46. Further, whenever possible we will read statutory language to give reasonable effect to every word, thereby avoiding surplusage. *Id.*

747

¶ 11. The question in this appeal is whether Moustakis is an "employee," as that term is used in WIS. STAT. § 19.356(2)(a)1. and defined in WIS. STAT. § 19.32(1bg), such that he may maintain an action for judicial review under WIS. STAT. § 19.356(4). The answer requires that we analyze certain statutes within, and cross-referenced by, Wisconsin's public records law, WIS. STAT. §§ 19.21–19.39. The interpretation and application of a statute is a question of law. *MercyCare Ins. Co. v. Wisconsin Comm'r of Ins.*, 2010 WI 87, ¶ 26, 328 Wis. 2d 110, 786 N.W.2d 785.

■■

¶ 12. The public records law is a fundamental concept in our state's history of transparent government. *Journal Times v. City of Racine Bd. of Police & Fire Comm'rs*, 2015 WI 56, ¶ 45, 362 Wis. 2d 577, N.W.2d. It is the declared public policy of the state that "all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them." WIS. STAT. § 19.31. Accordingly, we construe the public records law "in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied." *Id.*; *see also Journal Times*, 362 Wis. 2d 577, ¶ 45.

¶ 13. These principles are put into practice by WIS. STAT. § 19.35, which provides for the right of the public to inspect government records and includes provisions governing, among other things, the payment of fees and the time by which to comply with a request for records. The legislature recognized that some records that are subject to disclosure would

inevitably contain "personally identifiable information" about some individuals; these individuals are known as "record subjects." *See* Wis. Stat. § 19.32(2g).

¶ 14. Generally speaking, record subjects are not entitled to notice that a record concerning them will be released, nor are they entitled "to judicial review of the decision of an authority to provide a requester with access to a record." Wis. Stat. § 19.356(1). However, the legislature has excluded three narrow categories of records from this general rule, which categories are defined by Wis. Stat. § 19.356(2)(a)1.-3. An "authority" intending to release records falling within the ambit of one of these categories must provide notice to the record subject. Para. 19.356(2)(a); *see also* Wis. Stat. § 19.31(1) (defining "authority"). After receiving notice, the record subject has five days to notify the authority of his or her intent to seek a court order enjoining release of the records, and ten days to commence an action seeking such relief. Wis. Stat. § 19.356(3), (4).

¶ 15. In this case, Moustakis asserts he is entitled to bring an action to enjoin release because the records responsive to The Lakeland Times' request qualify under Wis. Stat. § 19.356(2)(a)1. That subdivision concerns a record "containing information relating to an employee that is created or kept by the authority and that is the result of an investigation into a disciplinary matter involving the employee or possible employment-related violation by the employee of a statute, ordinance, rule, regulation, or policy of the employee's employer." *Id.* We conclude the records at issue in this case cannot qualify under § 19.356(2)(a)1. because Moustakis is not an "employee," and therefore the records do not contain information "relating to an

employee."[6] We reach this conclusion because district attorneys are specifically excluded from the definition of "employee" under Wis. Stat. § 19.32(1bg).

¶ 16. As indicated, "employee" is a defined term within the public records law. An "employee" is "any individual who is employed by an authority, other than an individual holding local public office or a state public office, or any individual who is employed by an employer other than an authority." Wis. Stat. § 19.32(1bg). "Authority" is also a defined term within the public records law, and includes a vast number of governmental entities "having custody of a record," including, as relevant here, "a state or local office." Wis. Stat. § 19.32(1).[7] As is evident from § 19.32(1bg)'s plain language, there are two categories of "employ-

---

[6] The DOJ argues the records at issue in this case do not otherwise qualify under Wis. Stat. § 19.356(2)(a)1. because they do not relate to a disciplinary matter or an employment-related violation of law, and because § 19.356(2)(a)1. applies "only to investigative documents actually prepared by the employee's employer." Because we resolve the case on alternative grounds, we need not address these issues. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (if the circuit court's judgment may be affirmed on one ground, other issues need not be addressed), *cited with approval in deBoer Transp., Inc. v. Swenson*, 2011 WI 64, ¶ 42, 335 Wis. 2d 599, 804 N.W.2d 658.

[7] The full text of Wis. Stat. § 19.32(1) is as follows:

"Authority" means any of the following having custody of a record: a state or local office, elective official, agency, board, commission, committee, council, department or public body corporate and politic created by the constitution or by any law, ordinance, rule or order; a governmental or quasi-governmental corporation except for the Bradley center sports and entertainment corporation; a special purpose district; any court of law; the assembly or senate; a nonprofit corporation which receives more than 50% of its funds from a county or a municipality, as defined in s. 59.001 (3), and which provides services related to public health or safety

ees": those who are employed by an "authority"—a category further narrowed by the subsequent limiting clause excluding state and local public office holders— and those who are employed but not by an "authority."

¶ 17. Moustakis concedes he cannot qualify as an "employee" within the first category due to WIS. STAT. § 19.32(1bg)'s exclusionary clause removing state public office holders from that definition. As a district attorney, Moustakis is without dispute an individual holding a "state public office," which is another of the public record law's defined terms. *See* WIS. STAT. § 19.32(4). That definition cross-references WIS. STAT. § 19.42(13), which provides that, among other things, a "state public office" includes "all positions identified under s. 20.923(2)." WIS. STAT. § 19.42(13)(c). In turn, WIS. STAT. § 20.923(2) identifies constitutional officers and other elected state officials, among them district attorneys. *See* WIS. STAT. § 20.923(2)(j). Thus, Moustakis, as a district attorney, is the holder of a "state public office" and does not qualify as an "employee" of an "authority" under the first category of employees established by § 19.32(1bg).

■■■■

¶ 18. Moustakis nonetheless argues that, although he does not qualify as an "employee" of an "authority," he falls within the second category of employees established by WIS. STAT. § 19.32(1bg), those who are "employed by an employer other than an authority." In other words, Moustakis argues we need not even reach the exclusionary clause in the first category of "employees," because he is not employed by an "authority" in the first instance. Moustakis reaches

---

to the county or municipality; a university police department under s. 175.42; or a formally constituted subunit of any of the foregoing.

this conclusion through a strained reading of the applicable statutes, which we conclude unambiguously foreclose his argument.

¶ 19. Moustakis asserts he is not employed by an "authority" because he is employed by the State of Wisconsin, which is not specifically identified as an "authority" under WIS. STAT. § 19.32(1). Thus, as Moustakis's theory goes, he qualifies as an "employee" under WIS. STAT. § 19.32(1gb) because he is "employed by an employer other than an authority." Moustakis acknowledges the difficulty with this argument: an "authority" includes a "state office." Subsec. 19.32(1). As a result, Moustakis argues that although his elected office is an "authority," *he* is not an employee of that office because "his employment derives from the State Constitution, as well as the salary-fixing statutes which classify him as holding 'state public office.' " *See* WIS. CONST. art. VI, § 4; WIS. STAT. § 19.32(4); WIS. STAT. § 19.42(13)(c); WIS. STAT. § 20.923(2)(j).

¶ 20. Moustakis's construction of WIS. STAT. § 19.32(1) is unsupported by the authorities he cites and is contrary to any reasonable reading of the statute. The distinction Moustakis seeks to draw between "holding" a state public office and being "employed" by a state public office is entirely of his making. Moustakis is a district attorney, which, as we have indicated, is a "state public office" under the statutes Moustakis cites. A state office *is* an "authority" as that term is defined in § 19.32(1), and, but for the exclusionary clause in WIS. STAT. § 19.32(1bg), Moustakis would qualify as an "employee" under the first category as an "employee" employed by an "authority." That Moustakis would otherwise qualify as an "employee" of an "authority" means that he cannot also be employed by "an employer other than an authority."

Moustakis's contrived argument fails to account for the straightforward notion that he both holds the state office of district attorney and is an employee of that office; the two capacities are not mutually exclusive.

¶ 21. Moustakis argues that an interpretation excluding anyone holding "state public office" from the definition of "employee" is inconsistent with another of the public record law's provisions, WIS. STAT. § 19.356(9), which provides that certain individuals are entitled to notice of the pending release of a record and to supplement the released record. As relevant here, that statute provides:

> Except as otherwise authorized or required by statute, if an authority decides under s. 19.35 to permit access to a record containing information *relating to a record subject who is an officer or employee of the authority holding a local public office or a state public office*, the authority shall, before permitting access and within 3 days after making the decision to permit access, serve written notice of that decision on the record subject, either by certified mail or by personally serving the notice on the record subject.

Para. 19.356(9)(a) (emphasis added). Based on the italicized language, Moustakis asserts WIS. STAT. § 19.32(1bg)'s definition of "employee" must also include some individuals who hold local or state public office. Otherwise, Moustakis contends, the term "employee" in § 19.356(9)(a) is mere surplusage.

¶ 22. As an aside, it is important to note what Moustakis is *not* arguing. He does not contend the language of WIS. STAT. § 19.356(9)(a) creates ambiguity regarding the definition of "employee" in WIS. STAT. § 19.32(1bg). Ambiguity exists when a statute is "capable of being understood by reasonably well-informed

753

persons in two or more senses." *State ex rel. Kalal*, 271 Wis. 2d 633, ¶ 47. Rather, Moustakis insists § 19.356(9)(a)'s use of the word "employee" supports his interpretation of § 19.32(1bg) as unambiguously placing him in the second category of "employees"—those who are employed by an employer other than an "authority." If § 19.32(1bg) were ambiguous, this would permit reference to extrinsic sources of meaning, like legislative history, to resolve the ambiguity. *State ex rel. Kalal*, 271 Wis. 2d 633, ¶ 51. The Act that created §§ 19.32(1bg) and § 19.356(2)(a) includes notes by the Joint Legislative Council's Special Committee on Review of the Open Records Law that confirm our interpretation of those statutes.[8] *See* Notes to §§ 1 & 4, 2003 Wis. Act 47. Moustakis does not argue to the contrary regarding the substance of these notes or the legislative history more generally. Because this legislative history does not support his argument, Moustakis desires to avoid any suggestion that the statutory provisions on which his arguments rely are ambiguous.

¶ 23. While Wɪs. Sᴛᴀᴛ. § 19.356(9)(a) could be better drafted, this shortcoming does not establish that Moustakis unambiguously is an "employee" under Wɪs. Sᴛᴀᴛ. § 19.32(1bg). Moustakis attempts to insert the definition of the term "employee" into § 19.356(9)(a), which is an otherwise reasonable thing to do but for the fact that it creates a befuddling mess of that statute. Rather, we conclude the phrase "who is an officer or employee of the authority holding a local record office or state public office" was intended to be

---

[8] It is well established that legislative history may be consulted to "confirm or verify a plain-meaning interpretation." *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 51, 271 Wis. 2d 633, 681 N.W.2d 110.

read as one restrictive clause modifying the term "record subject" in § 19.356(9)(a). Contrary to Moustakis's argument, this interpretation of § 19.356(9)(a), which is based on a straightforward, common sense reading of that statute, is fully consistent with § 19.32(1bg) in that both statutes recognize there are individuals who are employed by an "authority" and who also hold a local or state public office. In this sense, an individual who is not an "employee" under § 19.32(1bg) may nonetheless qualify as an "officer or employee of the authority holding a local public office or state public office" under § 19.356(9)(a).

¶ 24. At the end of this winding statutory path lies the inescapable conclusion that Moustakis is not an "employee" within the meaning of Wis. Stat. § 19.32(1bg). This means the records requested by The Lakeland Times do not "relate" to Moustakis as "an employee" under Wis. Stat. § 19.356(2)(a)1. Because the records do not fall within this narrow exception to the general rule that a "record subject" is not entitled to advance notice or judicial review of the release of records pertaining to that record subject, Moustakis lacks standing to bring this action under Wis. Stat. § 19.356(4). Thus, the circuit court properly dismissed Moustakis's claim under Wisconsin's public records law.

*By the Court.*—Order affirmed and cause remanded for further proceedings.